ENTERED
AUG - 2 2005
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JAMES STEVEN TINCHER,

Plaintiff,

v. CIVIL ACTION NO. 2:03-0030

KATHY FINK, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Defendants' Motion for Summary Judgment [Docket 40]. For the following reasons, the court **FINDS** that no genuine issues of material fact remain and **GRANTS** the defendants' motion.

**I. Facts**

On January 10, 2001, Humane Officer Kathy Fink (Humane Officer Fink) responded to a call from Jo Ann Knopp regarding a possibly injured animal. Humane Officer Fink reported to Ms. Knopp's home, located at 147 Ninth Avenue, South Charleston, West Virginia. When she arrived, Ms. Knopp reported that three of her cats had been missing since the previous week and that she thought she had heard one of the cats under her neighbor's back steps. There is conflicting evidence in the record as to whether Ms. Knopp also informed Humane Officer Fink about the existence of a trap under the steps. Humane Officer Fink went onto the adjacent property of the plaintiff, James Steven Tincher, in order to investigate. When Humane Officer Fink looked under the steps, she saw a live animal trap and what she thought was animal fur and

dried blood around the trap. At some point in the investigation of the back step area, Ms. Knopp threw a chain into the trap and became very upset when the trap snapped shut. After returning to Ms. Knopp's' house, Humane Officer Fink attempted to reach the Chief of Police and/or the City Attorney to get advice on how she should proceed. At this time, Ms. Knopp asked her son, Roy Thompson, to return to Mr. Tincher's property to take pictures and video footage of the trap. Ms. Knopp, Mr. Thompson, and Officer Fink have all testified that Officer Fink was not aware of Mr. Thompson's actions and that she did not request or advise that he gather such evidence. In fact, all three testified that Officer Fink was not even aware that Mr. Thompson had left the house. Shortly after Humane Officer Fink called the local police for advice, Corporal Matthew Arrowood of the South Charleston Police Department responded to Ms. Knopp's house to assist Officer Fink. Officer Arrowood discussed the situation with Officer Fink and Ms. Knopp, but did not enter Mr. Tincher's property to view the trap. Later that day, Mr. Thompson provided Officer Arrowood with a copy of the video footage he had shot of the trap and his mother, Ms. Knopp, brought copies of the photographs to the police station three days later.

On January 11, 2001, Officer Arrowood filed a sworn criminal complaint in the South Charleston Municipal Court alleging that James Tincher unlawfully violated Article 505, Section 505.04 of the Official Code of the City of South Charleston. Section 505.04 states, in pertinent part, that: "No person shall hunt, kill, or attempt to kill any animal or fowl by the use of firearms, bow and arrow, air rifle or any other means within the corporate limits of the Municipality." The criminal complaint alleged that "James Steven Tincher did on or about the 10th day of January 2001 commit the offence of hunting within city limits by having on his property an animal trap equipped with prong type implements to apparently trap animals in an

inhumane manner." Criminal Complaint. On January 11th, Officer Arrowood served the warrant on Mr. Tincher at city hall and Mr. Tincher was released the same day on a $500 bond. He was found not guilty of the charge on August 22, 2001, following a bench trial in the municipal court.

On January 10, 2003, Mr. Tincher filed an eight-count complaint with this court, alleging civil rights violations of his Fourth, Fifth, and Fourteenth Amendment rights as well as several state-law causes of action, all arising out of his January 11, 2001 arrest and prosecution. For reasons appearing to the court, this action was stayed on October 9, 2003. On June 21, 2004, the case was reinstated to the active docket and the defendants have timely filed the pending motion for summary judgment.

## II. Analysis

### A. Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*,

477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**B. State Claims**

The court will begin with an examination of the plaintiff's claims arising pursuant to state law. In Count I of his Complaint, the plaintiff alleges that "Defendant Arrowood without properly investigating the matter and without observing any criminal conduct by the Plaintiff filed a Criminal Complaint in the South Charleston Municipal Court as mentioned above. That Defendant Arrowood in collusion with Defendant Fink caused the Plaintiff to be falsely arrested and maliciously prosecuted for the above referenced offenses." In Count II, the Plaintiff further alleges that "Defendant Fink in collusion with Defendant Arrowood without probable cause and without process of law illegally searched Plaintiff's premises and subsequently caused Plaintiff to be falsely and illegally arrested charged with the offense of Hunting within City Limits and maliciously prosecuted."

In their motion for summary judgment, the defendants argue that the plaintiff's state law claims of false arrest, defamation and malicious prosecution are barred by the one year statute of limitations. In West Virginia, "personal tort actions such as libel, defamation, false arrest, false imprisonment, and malicious prosecution take the one year statute provided by West Virginia Code § 55-2-12(c) because they are excluded from statutory survivability under West Virginia Code § 55-7-8(a)." *Wilt v. State Auto Mut'l Ins. Co.*, 506 S.E. 2d 608, 613-14 (W. Va. 1998). In

the present case, the plaintiff was charged with violating section 505.04 of the Official Code of the City of South Charleston on January 11, 2001 and found not guilty of these charges on August 22, 2001. Pursuant to these facts, Mr. Tincher had until August 23, 2002, at the latest, to bring these state law claims.

In his response, the plaintiff "does not dispute the time frame asserted by defendants," and instead argues that "the Defendants have waived any comfort they may seek" from their statute of limitations argument. In support of this argument, Mr. Tincher alleges that "in the case at bar, the Defendant, in his answer mentions the statutes, but never breaks it out separately as a defense, instead choosing to merely list it, along with all other potential defenses in a boiler-plate paragraph." Mr. Tincher correctly notes that Rule 8(c) of the *Federal Rules of Civil Procedure* mandates that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively. . . statute of limitations. . . ."

As the plaintiff notes, however, the defendants' Answer did, in fact, set forth the affirmative defense of "expiration of the statutes of limitations." Answer at ¶ 20. Although the defendants do not explain their affirmative defenses in detail, and instead rely on "boilerplate language," such an explanation is not required. While affirmative defenses must be asserted in a defendant's responsive pleading, such defenses are "sufficiently raised for purposes of Rule 8 by [their] bare assertion." *Santos v. Dist. Council of New York City*, 619 F.2d 963, 967 (2d Cir. 1980). See also *Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991) (stating that statute of limitations affirmative defense "need not be raised with any rigorous degree of specificity" and bare assertion in answer is sufficient to prevent waiver). Accordingly, the defendants' have not waived this defense. Because the plaintiff has failed to offer any evidence

to demonstrate that a genuine issue of material fact remains, the court **GRANTS** the defendants' motion for summary judgment as to Counts I and II of the Complaint.

**C. Claims Pursuant to Section 1983**

Count V of the plaintiff's Complaint states a claim for civil damages pursuant to 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code imposes civil liability on anyone "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" To maintain a § 1983 action, Mr. Tincher must show that: (1) he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the defendants deprived him of this right while acting under "color of any [law]." *See, e.g., Lugar v. Edmondson Oil Co., Inc.*, 922 U.S. 930, 939 (1982).

In Count V of his Complaint, the plaintiff alleges that "the conduct of the Defendants jointly and severally, stated herein was grossly illegal and deprived Plaintiff of his rights and privileges secured by the United States Constitution and the laws of the United States in violation of 42 U.S.C.; that the conduct of the Defendants jointly and severally, included but is not limited to (1) unlawful arrest of Plaintiff (2) malicious prosecution of Plaintiff, (3) illegal search of Plaintiff's property which said actions were illegal, improper, unnecessary and unrelated to any activity this law enforcement agencies may appropriately and legally engage in the course of protecting person or maintaining civil order. In addition to the unlawful arrest of plaintiff, malicious prosecution of Plaintiff, illegal search of Plaintiff's property, Defendants jointly and severally, by gross negligence and/or intentionally, mentally abused, intimidated, harassed,

embarrassed, ridiculed and slandered Plaintiff." The court will begin with a discussion of the plaintiff's false arrest and malicious prosecution claims.

**D. Section 1983 and False Arrest/Malicious Prosecution Claims**

Defendants Arrowood and Fink contend that they are entitled to qualified immunity with respect to Mr. Tincher's § 1983 claims. The Supreme Court has recognized the qualified immunity of government officials from civil damages in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This court must engage in a two-step analysis to determine if these officers are to be given the protection of this immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). The "threshold question" in the qualified immunity analysis on summary judgment is whether, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." *Id.* If the answer is "no," the plaintiff cannot prevail and the court need not inquire any further. *Gomez v. Atkins*, 296 F.3d 253 (4th Cir. 2002). If the answer is "yes," the court "must then consider whether, at the time of the violation, the constitutional right was clearly established, that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier*, 533 U.S. at 201-202). Furthermore, "[t]he United States Court of Appeals for the Fourth Circuit has emphasized that qualified immunity protects law enforcement officers from 'bad guesses in gray areas' and ensures that they may be held personally liable only 'for transgressing bright lines.'" *St. Clair v. Town of Rocky Mount*, 2005 U.S. Dist. Lexis 1376, at *6 (W.D. Va., Feb. 1, 2005) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The plaintiff argues that Corporal Arrowood and Humane Officer Fink are liable pursuant to 42 U.S.C. § 1983 because of his "false arrest" and their "malicious prosecution of Plaintiff." In support of his false arrest claim, Mr. Tincher argues that there is no probable cause to support either the warrant or the arrest of the Plaintiff. As the Supreme Court has made clear, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Because of this established principle, the Fourth Circuit has recognized that "there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Instead, an appropriate § 1983 claim in this context is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution–specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Id.* (citing *Brooks v. City of Winston Salem*, 85 F.3d 178, 183 (4th Cir. 1996). Similarly, § 1983 actions premised on false arrest claims are also analyzed as unreasonable seizures under the Fourth Amendment. *Curtis v. Devlin*, 2005 U.S. Dist. LEXIS 6703, at *23 (E.D. Va., April 19, 2005).

Thus, in order to successfully demonstrate a deprivation of his constitutional rights in this case, "as required by the first step of the qualified immunity analysis," Mr. Tincher must first show that there was a lack of probable cause for his arrest and subsequent prosecution on the charge of prohibited hunting. Mr. Tincher accordingly faces a fairly high threshold. The Supreme Court has noted that "only where . . . [a] warrant application is so lacking in indicia of probable cause as to render the official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335 (1986). Accordingly, in the context of this

case, "there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed by an individual; evidence sufficient to convict that individual of the charged offense is not required. *Curtis*, 2005 U.S. Dist. LEXIS, at *25 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963). Thus, "if a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers*, 249 F.3d at 290.

Given these settled principles, Mr. Tincher can only avoid summary judgment on his "false arrest" and "malicious prosecution" claims against Officer Arrowood and Humane Officer Fink if the record demonstrates that no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause existed to arrest him. *Id.* This is so because both his false arrest and malicious prosecution claims are recast as alleged violations the Fourth Amendment seizure protections. As noted above, in the context of a malicious prosecution claim, this Fourth Amendment analysis also incorporates the requirement that the prior proceeding terminate in the plaintiff's favor. Because Mr. Tincher was found not guilty of the alleged offense on August 23, 2001, he has clearly satisfied this portion of the analysis. The court will now inquire into whether probable cause existed for Mr. Tincher's arrest and subsequent prosecution.[1]

---

[1] In their motion for summary judgment, the defendants argue that Officers Arrowood and Fink are entitled to summary judgment because they broke the causal chain and insulated themselves from § 1983 liability by presenting all relevant information to an intermediary, the city attorney, who in turn made the independent decision to proceed. The plaintiff spends a great portion of his reply brief responding to this argument and arguing that "the City Prosecuting Attorney Amy Haynie was supplied with false information by Kathy Fink." The defendants' analysis may very well outline a defense to the state law torts of false arrest (continued...)

Probable cause for an arrest warrant is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Before Corporal Arrowood sought a criminal complaint in this case, he reviewed a videotape of the very trap that formed the basis for the complaint and spoke with Humane Officer Fink, Ms. Knopp, and Mr. Thompson. Officer Arrowood had also reviewed the statement of Humane Officer Fink, in which she describes in detail her recollection of the trap as well as her belief that there was hair and dried blood in and around the trap. Arrowood also took the statement of Ms. Knopp, which described the location, features, and condition of the trap in language that corroborated Humane Officer Fink's statement. Ms. Knopp also reported that three

[1](...continued)
and malicious prosecution. In the context of the present § 1983 analysis, however, this analysis is not sufficient evidence of probable cause. In *Malley v. Briggs*, 475 U.S. 335 (1986), the Supreme Court rejected a police officer's argument that he was shielded from the damages liability of § 1983 because he applied for a warrant and a judicial officer found that sufficient probable cause existed to issue the warrant. The court noted that the relevant question "in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officers' application for a warrant was not objectively reasonable. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system . . . . We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." *Id.* at 345-346. The Court went on to note, however, that this rule "in no way requires the officer to assume a role even more skilled than the magistrate." *Id.* The court did note that "where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot beheld liable." *Id.* Thus, the issuance of a warrant by a detached and neutral magistrate is not a per se defense to a Fourth Amendment seizure claim such as those raised by Mr. Tincher. Instead, the analysis necessarily turns on the existence of probable cause–if sufficient probable cause existed for the magistrate to issue the warrant, then the officer is not liable. If there is an unreasonable lack of probable cause, however, the Court has determined that this consists of an "unreasonable error indicating gross incompetence or neglect of duty" on the part of the magistrate and that the "officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Id.* Although this court has examine Mr. Tincher's allegations that Officer Fink provided false information to the city attorney, it has done so as part of its analysis of the probable cause that existed at the time of Mr. Tincher's arrest.

of her cats were missing, that she had heard a cat howling under the porch, and that she and Mr. Tincher had a longstanding feud about her cats roaming all over his yard. Finally, Corporal Arrowood consulted with the city attorney, Amy Haynie, who advised him that he had gathered sufficient evidence to proceed with the misdemeanor charge of prohibited hunting. Accordingly, when he filed his criminal complaint, Officer Arrowood had before him the videotape of the trap, Ms. Knopp's complaints of missing cats and her reported longstanding disagreement with Mr. Tincher about the cats, as well as Humane Officer Fink's own concerns about the trap. Thus, it would seem that the facts and circumstances within Officer Arrowood's knowledge were sufficient to warrant a prudent person in believing that Mr. Tincher was using these traps for the prohibited purpose of hunting within the confines of the municipality of South Charleston. As the Fourth Circuit has noted "in dealing with probable cause . . . we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Melton v. Dermota*, 1991 U.S. LEXIS 17788, at *14-15 (4th Cir. 1991).

In attacking the sufficiency of probable cause in this case, Mr. Tincher argues that "[i]n the case at bar, it is evident that no probable cause existed to support either the warrant or the arrest of plaintiff. As Defendants Matt Arrowood and Kathy Fink admitted, trapping rats in South Charleston is not a crime . . . ." Although Mr. Tincher was eventually found not guilty of the prohibited hunting charge, this court must look at the probable cause in light of what was known to the officers at the time of the arrest, not after the evidence had been fully developed and tested at trial. The Supreme Court has noted that "there is a large difference between [proving guilt in a criminal case and showing probable cause for an arrest or search], as well as

between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." *Brinegar v. United States*, 338 U.S. 160, 173 (1949).

Mr. Tincher also alleges that Humane Officer Fink and Corporal Arrowood provided false information to the city attorney, who in turn relied on this false information in the charging process. The only evidence presented by Mr. Tincher to support this allegation, however, is a drawing done by Officer Fink which she now admits is "inaccurate." Without relying on this drawing, however, the Officer Arrowood had probable cause to arrest Mr. Tincher for prohibited hunting. Additionally, there is no evidence in the record to suggest that this drawing formed the basis for the decision to charge Mr. Tincher or that it was "utilized" by City Attorney Haynie during the charging process.[2] As the Fourth Circuit has noted, a false or misleading statement made while obtaining a warrant constitutes a Fourth Amendment violation only if the statement is necessary to the finding of probable cause. *Wilkes v. Young*, 28 F.3d 1362, 1364 (4th Cir. 1994) (citing *Albright v. Oliver*, 114 S. Ct. 807 (1994).

---

[2] In his response, Mr. Tincher also argues, rather conclusively, that his "arrest was a payback by the Police Department of the City of South Charleston for the prior arrest and conviction of the Chief's son, an officer of the City of South Charleston, for dealing drugs by the West Virginia State Police." The only evidence of this alleged vendetta is the plaintiff's own deposition testimony in which he describes a conversation with Jim Miller, the Chief of Police of South Charleston. Despite the fact that allegations of actual malice are insufficient in and of themselves to overcome a defense of qualified immunity, the plaintiff simply argues that "given the malice involved, it was evident that Plaintiff was going to be busted irregardless of what he did. It was payback time for the South Charleston Police Department, and they went for it." Because the court **FINDS** that probable cause existed to arrest Mr. Tincher and that the defendants behaved in a reasonable manner, the court concludes that this vague allegation of malice is not sufficient to overcome the defendants' qualified immunity. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (noting that "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner"); *Mee v. Hubbard*, 2003 U.S. Dist. LEXIS 21805, at *14 (D. Md. 2003) ("Nonetheless, a claim for malicious prosecution cannot be sustained where there existed probable cause for the arrest and prosecution.").

This court **FINDS** that probable cause supported the warrant for Mr. Tincher's arrest. He has, therefore, failed to overcome the threshold question and the court need not look further. Because Corporal Arrowood and Humane Officer Fink had probable cause to believe that Mr. Tincher had committed the crime of prohibited hunting, they have not lost their qualified immunity. Accordingly, the court **GRANTS** the defendants' motion for summary judgment as it relates to the plaintiff's false arrest and malicious prosecution claims.

**E. Section 1983 and Unreasonable Search by Kathy Fink**

Plaintiff Tincher also alleges that his civil rights were impinged by the "unlawful and unconstitutional search of his premises by the City of South Charleston and their agents and assigns." Mr. Tincher, however, has already litigated this issue once in the Municipal Court of South Charleston. During the pendency of the criminal charge against him, Mr. Tincher filed a motion to suppress, which the Honorable H. Wyatt Hanna, Municipal Court Judge denied following a hearing and the consideration of the testimony of Jo Ann Knopp, Roy Thompson, Humane Officer Fink, and Corporal Matt Arrowood. In his order denying Mr. Tincher's motion, Judge Hanna made detailed findings of fact and ultimately concluded that:

> Humane Officer Fink's statement regarding the animal trap which she saw under the Defendant's porch is admissible. Humane Officer Fink went onto the Defendant's property on the assumption that she was looking for an injured animal. At the time she looked under the Defendant's porch, she did not believe she was investigating a crime that would require her to obtain a search warrant before looking under the porch. "There is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof–whether the questioner be a pollster, a salesman, or an officer of the law." *Shoney v. Warden,*

> *Maryland State Penitentiary*, 401 F.2d 474, 478-9 (4th Cir. 1968) citing *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964). Thus, since the humane officer's sole purpose upon entering the Defendant's yard was to look under the porch for an injured animal and not to conduct a search, the evidence seized is admissible . . . . Accordingly, the Court hereby **DENIES** the Defendant's Motion to Suppress all evidence.

Judge Hanna also concluded that "Jo Ann Knopp acted independently and was not pressured, coerced, or subtly encouraged by Humane Officer Fink to enter the Defendant's property and look under his back porch steps. She was not acting as an agent of the City when she entered the Defendant's property. Thus, an illegal search was not made."

The doctrine of collateral estoppel prevents Mr. Tincher from re-litigating the Fourth Amendment search claims that have already been decided against him in the state municipal court. In *Allen v. McCurry*, 449 U.S. 90 (1980), the Supreme Court determined that "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." See *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 83 (1984) (summarizing its holding in *Allen*). In *Allen*, a criminal defendant invoked the Fourth and Fourteenth Amendments to suppress evidence that had been seized by the police. The trial court denied the suppression motion in part, and the defendant, Willie McCurry, was subsequently convicted after a jury trial. *Id.* at 91. Mr. McCurry, then brought a damages suit under 42 U.S.C. § 1983 against the officers who had entered his home and seized the evidence in question. In determining that collateral estoppel applied to McCurry's § 1983 claims, the Supreme Court noted that "the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion." *Id.* at 98. Accordingly, the

*Allen* court determined that collateral estoppel applies when § 1983 plaintiffs attempt to re-litigate in federal court issues decided against them in state criminal proceedings. *Id.*

Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* at 94 (citing *Montana v. United States*, 440 U.S. 147, 153 (1979). As the Supreme Court has noted, res judicata and collateral estoppel relieve the parties of "the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Montana*, 440 U.S., at 153-154.

Although it is well settled that the doctrine of collateral estoppel applies to § 1983 suits against police officers, the Court in *Allen* v. *McCurry* did not "consider precisely how the doctrine of collateral estoppel should be applied to a Fourth Amendment question that was litigated and decided during the course of a state criminal trial." *Haring v. Prosise*, 462 U.S. 306, 313 (1983). Thus, this court must also review whether collateral estoppel bars re-litigation of Mr. Tincher's Fourth Amendment claims in the present case. Title 28 U. S. C. § 1738 generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen*, 449 U.S. at 96. n.6. Thus, if the state courts would not give preclusive effect to the prior judgment, "the courts of the United States can accord it no greater efficacy" under § 1738. *Union & Planters' Bank v. Memphis*, 189 U.S. 71, 75 (1903).

There are, however, several general exceptions to the application of collateral estoppel. First, in federal actions, including § 1983 actions, a state court judgment will not be given

collateral estoppel effect where "the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Id.* at 101. "Additional exceptions to collateral estoppel may be warranted in § 1983 actions in light of the 'understanding of § 1983' that the "federal courts could step in where the state courts were unable or unwilling to protect federal rights." *Id.* Collateral-estoppel effect is also not appropriate when "controlling facts or legal principles have changed significantly since the state-court judgment," *id.* at 155, or when "special circumstances warrant an exception to the normal rules of preclusion." *Id.*

Mr. Tincher has not alleged that he did not have a "full and fair opportunity" to litigate his Fourth Amendment claims at the suppression hearing in this matter. In fact, Judge Hanna's detailed order references the testimony of Jo Ann Knopp and her son, Roy Thompson, as well as Officers Fink and Arrowood. Thus, this court concludes that there is no evidence to suggest that Mr. Tincher was not given a full and fair opportunity to litigate his objections to the allegedly unlawful search of his property by Humane Officer Fink and his neighbor, Jo Ann Knopp. Similarly, there is no evidence in the record to suggest that this federal courts should step in because of any failure on the part of the municipal court to protect federal rights. Additionally, no party has suggested, and this court was unable to find, any evidence that the controlling facts or legal principles have changed significantly since the state-court judgment.

Finding that no special exception exists, this court must consider whether, under the rules of collateral estoppel applied by the West Virginia courts, the denial of Mr. Tincher's motion to suppress would foreclose him in a later civil action from attempting to recover civil damages

based on the alleged illegality of the search. The West Virginia Supreme Court of Appeals has set out West Virginia's collateral estoppel theory as follows:

> Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit . . . . But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding.

*State v. LCS Servs., Inc.*, 414 S.E.2d 620, 625-26 (W. Va. 1992).

Accordingly, because Mr. Tincher's Fourth Amendment claims of unlawful search and seizure were fully, fairly, and actually litigated during his Municipal Court proceedings, the doctrine of collateral estoppel bars Mr. Tincher from re-litigating them in this court. In light of this bar, the court **GRANTS** the defendants' motion for summary judgment as it relates to Mr. Tincher's Fourth Amendment search claims. See *Gray v. Farley*, 13 F.3d 142 (4th Cir. 1993) (affirming award of summary judgment where § 1983 plaintiff was collaterally estopped from re-litigating constitutional claims resolved by the state court during suppression hearings). Accordingly, the defendants are entitled to summary judgment as to Count V of the Complaint

**F. Section 1983 and the Town of South Charleston**

**1. Respondeat Superior Theories**

In Count III of his Complaint, the plaintiff alleges that "the powers and duties of said Defendant City of South Charleston . . . are delegated to its police department officers and humane officers including Defendant Arrowood and Defendant Fink and the Defendant City of South Charleston is charged with the duty and responsibility of managing and supervising the actions of the police department officers, and humane officers in the performance of their official

duties . . . ." Accordingly, the plaintiff alleges that "all wrongful actions of Defendant Arrowood and Defendant Fink are the wrongful actions of Defendant City of South Charleston." Complaint [Docket 1] at ¶ 9. In Count IV of his Complaint, Mr. Tincher makes similar allegations against the City of South Charleston Police Department, arguing that the "wrongful actions of Defendant Arrowood and Defendant Fink are the wrongful actions of Defendant City of South Charleston Police Department." *Id.* ¶ 10. The defendants argue that they are entitled to summary judgment on these Counts, as § 1983 does not provide for the respondeat superior liability of these defendants.

As the defendants correctly note, the Supreme Court has held that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983.

*Monell v. Dept. of Social Serv.*, 436 U.S. 658, 694 (1978).

Because Mr. Tincher cannot state a claim against the City of South Charleston for the alleged wrongful acts of Defendants Arrowood and Fink, the court **GRANTS** the defendants' motion for summary judgment as to Count III of the Complaint. The court also **GRANTS** the defendants' motion as to Count IV of the Complaint, for both the above stated reasons and because the City of South Charleston Police Department has not been named as a defendant in this action.

**2. Municipal Liability Pursuant to § 1983**

The Complaint in this case does not state a claim for municipal liability against the City of South Charleston. In his response to the defendants' motion for summary judgment, however, the plaintiff argues for the first time that "many policies and customs of the City of South Charleston have caused his injury." Specifically, the plaintiff argues that section 505.04 "is so overly broad and vague that killing a fly, rat, or mosquito becomes a criminal offense in South Charleston."

Although the plaintiff now makes allegations about the customs or policies of South Charleston, the Complaint in this case fails to allege facts sufficient to support municipal liability against the City. To allow the plaintiff to now correct the deficiencies in his Complaint by response to the defendants' summary judgment would be unfair and untimely. See *Muhammad v. Giant Foods, Inc.*, 2000 U.S. Dist. LEXIS 21949, at * 18-19 (D. Md. 2000) (concluding that "[p]laintiffs are required to include their claims in the complaint so that defendants may respond and understand why they are bing sued. Because [the plaintiff] has not previously raised these two new claims, [the defendant] was denied an opportunity to prepare an adequate response."). Accordingly, the court **GRANTS** the defendants summary judgment as to all counts of the Complaint and **ENTERS** judgment in their favor.[3]

---

3 The court has granted summary judgment on all counts of the Complaint, but has not yet mentioned Counts VI, VII, and VIII. Count VI merely alleges the types of damages that the plaintiff claims, while Count VII states that the plaintiff is entitled to punitive damages. Count VIII states that the defendants are not protected by the immunity conferred by West Virginia Code § 29-12A-5(B).

## III. Conclusion

For the reasons stated above, the court **FINDS** that no genuine issues of material fact remain and **GRANTS** the defendants' motion for summary judgment [Docket 40]. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 2, 2005

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE